CASA BLANCA PROPERTIES, INC., recurrente, *v.* REGISTRADOR DE LA PROPIEDAD, SECCIÓN PRIMERA DE SAN JUAN, HON. ETIENNE BADILLO ANAZAGASTY, recurrido.

*Número:* RG-88-481 *Resuelto:* 5 de junio de 1992

*Antonio Roselló Rentas*, abogado del recurrente; El Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del tribunal.

Este recurso suscita controversias jurídicas nuevas, y nos permite refinar importantes principios en materia de derecho hipotecario.

# I

El 26 de junio de 1986, Casa Blanca Properties, Inc. constituyó sobre un *terreno* hipoteca a favor del Caguas Central Federal Savings Bank of P. R. (Caguas Central) —Escritura Núm. 37— por un millón cuatrocientos veinticinco mil ($1,425,000) e intereses al 20% anual, en garantía de un préstamo interino para la construcción del Condominio Casa Blanca en San Juan. En igual fecha, suscribió un pagaré a favor del referido acreedor hipotecario Caguas Central.(1)

Finalizada la construcción del edificio, el 11 de junio de 1987 se otorgó la Escritura Núm. 344 sobre constitución de condominio, ante el notario Antonio Roselló Rentas. Oportunamente fue inscrita en el Registro de la Prodiedad.

Comenzó la venta de los apartamentos recién terminados. A los fines de que la financiera Doral Mortgage Corp., suplidora del financiamiento permanente, obtuviera hipoteca con rango de primera, en la escritura de compraventa se individualizaba cada apartamento, comparecía el Caguas Central, liberaba la unidad vendida de la hipoteca primitiva y se procedía a su inscripción en el Registro de la Propiedad.

Así las cosas, el 19 de febrero de 1988 se otorgó ante el notario Roselló Rentas la Escritura Núm. 57. En ésta se vendía el *último apartamento (Núm. 9) del Condominio* en doscientos cincuenta y siete mil dólares ($257,000) a los esposos Claudio Renjifo Romero y Josefa M. Mundo Guzmán. Compareció también Caguas Central, tenedor del pagaré a *liberar* dicho apartamento de la hipoteca que lo gravaba por su procedencia.(2)

---

(1) La hipoteca presentada al asiento 352 del Diario de Operaciones 758 de San Juan el 1ro de julio de 1986 a las 11:25 A.M., fue despachada el 19 de marzo de 1987.

(2) El párrafo undécimo de la escritura disponía:

" 'El Banco', que es legítimo tenedor del Pagaré ... a solicitud de 'La Vendedora' procede a liberar, como por la presente libera totalmente de los efectos de la ya

Siguiendo la práctica anterior, en igual fecha los compradores esposos Renjifo-Mundo suscribieron escritura de hipoteca a favor de Doral Mortgage Corp. en garantía de un pagaré por ciento veinte mil dólares ($120,000), por un préstamo destinado a la adquisición del apartamento. Esta última escritura, en lo pertinente lee:

> Primero: Que el deudor es Dueño de la propiedad descrita en el párrafo quinto de la presente (en adelante "la propiedad") y que tiene el derecho de hipotecar dicha propiedad, *que la propiedad se halla libre de "cargas y gravámenes"*. (Énfasis suplido.)

La inscripción de esta escritura fue denegada por nota del Registrador en que advierte que falta la cancelación del pagaré e hipoteca de $1,425,000. Esa denegatoria originó este recurso.[3]

Recapitulando, para el financiamiento interino se constituyó hipoteca sobre el terreno en que iba a edificarse el Condominio Casa Blanca, y se otorgó pagaré hipotecario de $1,425,000. Concluida la obra, el edificio fue sometido al régimen de propiedad horizontal; por su procedencia la hipoteca quedó gravando cada uno de los nueve (9) apartamentos. A medida que se vendían se liberaban de

---

mencionada hipoteca el apartamiento que se describe en el párrafo TERCERO de este instrumento y que ha sido anteriormente individualizado con cuanto a dicho apartamiento le es anejo y pertenezca, inclusive la participación que al mismo le corresponde en los elementos comunes generales y de uso limitado del Edificio... A los fines de esta liberación se valora dicho acto en la suma de mil dólares ($1,000.00) entendiéndose que por tal acto de liberación *no se reduce en forma alguna ni el principal del pagaré ni de la hipoteca....*" (Énfasis suplido.) Apéndice, pág. 12.

[3] El texto de la denegatoria en recalificación consignó:

"Denegada la inscripción solicitada de la Escritura 57 del 19 de febrero de 1988 'observándose que el apartamento 9 del Condominio Casa Blanca es el último por liberarse y no dice en la escritura que la hipoteca queda totalmente cancelada y que el notario no da fe de haber cancelado el pagaré' [...] de conformidad con las Secciones 1767a. 2 y 1767b 8va. del Tomo 30 L.P.R.A. y el Artículo 68 de la Ley 198; tomándose en su lugar anotación preventiva por el término legal de 60 días de conformidad con el Artículo 71 de la vigente Ley Hipotecaria a favor de Caguas Central Federal Savings Bank of Puerto Rico de su derecho de liberación de hipoteca y de Claudio Renjifo Romero y Josefa Mercedes Mundo de su derecho de compra." Apéndice, pág. 1.

esa hipoteca para que la Doral Mortgage Corp. pudiera proveer financiamiento permanente con otra hipoteca de primer rango registral. Al venderse el último apartamento, el Registrador denegó la inscripción por entender que no podía liberarse, ya que había que cancelar el gravamen hipotecario del financiamiento interino sobre el solar.

## II

En su escrito el Registrador correctamente formula así las interrogantes jurídicas planteadas. "¿Debe ser cancelado el pagaré hipotecario de $1,425,000.00 de la hipoteca del financiamiento interino del desarrollador con interés al 20%, surgiendo claramente del Registro, que al venderse el último apartamento del Régimen de Propiedad Horizontal constitu[i]do hay unas seudoliberaciones que de tenerse por válidas haría un contrasentido, ya que por un lado liberarían la hipoteca de toda garantía hipotecaria y por otro lado mantendrían la hipoteca sin cancelar? La segunda controversia entendemos que es un derivado lógico de la controversia esencial, esto es: ¿Es la liberación (seudoliberación) un subterfugio legal para evadir el pago de arancel y no cancelar la hipoteca del financiamiento interino con su correspondiente título transferible por endoso?" Alegato del Registrador recurrido, pág. 5.

 Ambas cuestiones exigen, a modo de repaso, una referencia a una de las características principales de toda hipoteca: *su indivisibilidad.* Según el Art. 172 de la Ley Hipotecaria y del Registro de la Propiedad,[4] mientras la hipoteca no se cancele subsistirá íntegra sobre cualquier parte de los bienes. Dicho de otro modo, mientras no se cancele la hipoteca constituida sobre inmuebles dedicados al Régimen de Propiedad Horizontal, cada uno de los apar-

---

[4] 30 L.P.R.A. sec. 2568.

tamentos que se separen continuará sosteniendo como carga los créditos no cancelados. El comprador lo habrá adquirido con hipoteca, expuesto a perderlo si el acreedor acude judicialmente a cobrar total o parcialmente su crédito, pues cada apartamento responde de la totalidad del crédito.

Así lo visualiza el Art. 9 de la Ley de la Propiedad Horizontal, según enmendada por la Núm. 57 de 4 de junio de 1976, dispositivo de lo siguiente:

> Los créditos hipotecarios constituidos antes de ser sometido el inmueble al Régimen de propiedad horizontal, estarán sujetos a lo dispuesto en el art. 123 [actual 174] de la Ley Hipotecaria .... 31 L.P.R.A. sec. 1291g.

A su vez, el referido Art. 174 dispone:

> Si una finca hipotecada se dividiere en dos (2) o más, *no se distribuirá entre ellas el crédito hipotecario sino cuando voluntariamente lo acordaren el deudor y el acreedor.* No verificándose esta distribución, podrá repetir el acreedor *por la totalidad de la suma garantizada* contra cualquiera de las nuevas fincas en que se haya dividido la primera o contra todas a la vez. (Énfasis suplido.) 31 L.P.R.A. sec. 2570.

Nos orienta Morell sobre el concepto de indivisibilidad de la hipoteca:

> Uno de los caracteres del derecho de hipoteca, una vez constitu[i]do, es la indivisibilidad. La hipoteca existe, como dice la Exposición de motivos de la Ley de 1861, sobre todos los bienes gravados, sobre cada uno de ellos y sobre cada una de sus partes, y subsiste íntegra, mientras no se cancele, aunque se reduzca la obligación garant[iza]da, permaneciendo también íntegra sobre la parte de bienes que quede en el caso de que otra parte haya desaparecido.
>
> La indivisibilidad, como dice Barrachina, es, pues, de dos órdenes: Jurídica y Física. Jurídica, porque aunque se disminuya la obligación, el derecho real de hipoteca continúa en la cosa; física, porque aunque la finca se divida en fracciones, continúa ese gravamen sobre cualquiera parte que se conserve, aunque la restante haya desaparecido.

En su consecuencia, si se hipoteca un terreno y desaparece en parte, sobre el resto grava la hipoteca; si se divide la finca única en tres, cada una de ellas responde de la totalidad del gravamen.

2° Cuando la finca hipotecada se dividiere después en dos o más y no acordasen distribuir entre ellas el crédito voluntariamente el deudor y el acreedor. *En este caso subsiste la indivisibilidad de origen, y el acreedor puede repetir contra cualquiera de las nuevas fincas la totalidad de la suma garantizada por aquella que les dio origen, sin que por el hecho de repetir contra una se entiendan libres los demás, hasta que el crédito se halle completamente satisfecho.* ... (art. 123 y Resolución del 27 de febrero de 1875). (Énfasis suplido.) *Comentarios a la Legislación Hipotecaria*, 2da ed., Madrid, Ed. Reus, 1930, T. IV, págs. 26–27.

## II

En esta instancia, la pretendida liberación del apartamento Núm. 9 de la Hipoteca del *financiamiento interino* atenta contra el principio de legalidad registral. Generaría una discrepancia impermisible entre los asientos del Registro y la realidad jurídica. *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802 (1981). Autorizar su liberación chocaría contra el Art. 173 de la Ley Hipotecaria y del Registro de la Propiedad, preceptivo de que "[l]a *hipoteca subsistirá íntegra, mientras no se cancele*, sobre la *totalidad* de los bienes hipotecarios aunque se reduzca la obligación garantizada ... pero sin perjuicio de lo que se dispone en las dos siguientes secciones". (Énfasis suplido.) 30 L.P.R.A. sec. 2569.

Aunque una finca se divida posteriormente, el gravamen hipotecario subsiste en su totalidad sobre cualquier parte de los bienes que se conserve. Únicamente es susceptible una reducción de la obligación así garantizada en virtud de lo dispuesto en el Art. 174 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, que dispone:

Si una finca hipotecada se dividiere en dos (2) o más, no se distribuirá entre ellas el crédito hipotecario sino cuando voluntariamente lo acordaren el deudor y el acreedor. *No verificándose esta distribución*, podrá repetir el acreedor por la totalidad de la suma garantizada contra cualquiera de las nuevas fincas en que se haya dividido la primera o contra todas a la vez. (Énfasis suplido.) 30 L.P.R.A. sec. 2570.

■ No es posible liberar un apartamento de un crédito hipotecario afirmando que " '[n]o se reduce en forma alguna ni el principal del pagaré ni de la hipoteca' ". Alegato del recurrido, pág. 11. Si el crédito hipotecario o el valor del pagaré no disminuyen, ¿en qué consiste la liberación? Nuestro ordenamiento registral no permite liberar en un asiento la hipoteca y dejar vigente el asiento del derecho real de hipoteca;[5] implicaría burlar el pago de arancel hipotecario y notarial. "En algunos casos los créditos hipotecarios constitu[i]dos *antes* de la dedicación al régimen de propiedad horizontal no han sido debidamente cancelados en el Registro de la Propiedad antes de presentarse para su inscripción, las escrituras de separación y venta de los apartamientos. *El no cancelar los mencionados créditos hipotecarios perjudica a los adquirentes, y al Estado, y aventaja a los acreedores.*" (Énfasis suplido.) *Ponencias y comunicaciones presentadas al III Congreso Internacional de Derecho Registral*, San Juan, Instituto del Derecho Registral y Notarial de Puerto Rico, 1977, T. I, págs. 489 y 490.

En resumen, estamos ante un esquema anormal e impermisible. Si bien todos los apartamentos han sido "liberados" de la hipoteca de construcción, ésta no ha sido cancelada ni parcial ni totalmente. Como figura absurda

---

(5) Recordamos el Art. 138 de la Ley Hipotecaria y del Registro de la Propiedad:

"...las inscripciones de hipoteca constituidas para garantizar obligaciones representadas por títulos transferibles por endoso o pagaderos al portador, cualquiera que sea la denominación que se les asigne, *se cancelarán total o parcialmente mediante escritura otorgada por los tenedores legítimos de los títulos expresados. En todo caso deberá hacerse constar en la escritura la identificación de los títulos y su inutilización o reducción parcial en el acto del otorgamiento.*" (Énfasis suplido.) 30 L.P.R.A. sec. 2462.

permanente, subsiste en los libros del Registro de la Propiedad una hipoteca despojada por sucesivas liberaciones de toda garantía inmobiliaria y desvinculada por completo del inmueble sobre el cual fue constituida. Simultáneamente, en el tráfico de valores subsiste un pagaré engañoso, cuyo importe dice estar asegurado con primera hipoteca sobre el Condominio Casa Blanca.(⁶) Tampoco se han satisfecho los derechos arancelarios. Véase *Lincoln American Corp. v. Registrador*, 106 D.P.R. 781, 783 (1978).

■ La estructura jurídica de la hipoteca representada por título al portador o endosatario impone como único medio de liberación —en protección de tercero y del propio adquirente de apartamento individualizado— la cancelación parcial o total del gravamen por el método y el procedimiento ordenado en el Art. 138 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2462.

Es compulsoria la cancelación total de la hipoteca congénita siguiendo el procedimiento ordenado en el Art. 138 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, y naturalmente, satisfacer el pago de los derechos de arancel correspondientes que hasta ahora había eludido la recurrente, Casa Blanca Properties, Inc. Así damos protección a los importantes valores tutelados en juego: la exactitud registral, el interés de tercero que pudiera adquirir el pagaré en cuestión, y los derechos de arancel.

*Se dictará sentencia confirmatoria de la nota del Registrador de la Propiedad.*

_____

(⁶) Esta anomalía se habría evitado de haberse optado al liberar por la cancelación parcial que provee el Art. 131 de la Ley Hipotecaria y del Registro de la Propiedad:

"Procederá la cancelación parcial:

"1ro. Cuando se reduzca el inmueble objeto del asiento

"2do. Cuando se reduzca el derecho registrado." 30 L.P.R.A. sec. 2455.

Mientras quedase un solo apartamento por liberar, podía tomarse la liberación como reducción de la garantía hipotecaria al exclusivo arbitrio del acreedor, Caguas Central.