EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fabiola Fernández Chaves<br><br>Peticionaria<br><br>v.<br><br>Ismael L. Purcell Soler<br>Registrador de la Propiedad<br>Sección de Guayama<br><br>Recurrido | 2016 TSPR 68<br><br>195 DPR ____ |

Número del Caso: RG-2015-4

Fecha: 14 de abril de 2016

Abogado de la Parte Peticionaria:

    Por derecho propio

Abogado de la Parte Recurrida:

    Por derecho propio

 Materia: Sentencia del Tribunal con Voto Particular Concurrente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fabiola Fernández Chaves
        Peticionaria

            v.
                                    RG-2015-4
Ismael L. Purcell Soler
Registrador de la Propiedad
    Sección de Guayama
        Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 14 de abril  de 2016.

El Hon. Ismael L. Purcell Soler, Registrador de la Propiedad de la Sección de Guayama (en adelante Registrador), notificó a la Lcda. Fabiola Fernández Chávez (peticionaria) la denegatoria de inscripción de una escritura sobre segregación, liberación y compraventa. La peticionaria presentó el recurso gubernativo de epígrafe y arguye que conforme a la Ley Núm. 216-2010[1], el Registrador estaba impedido de calificar dicha escritura. Sostiene que al transcurrir el término improrrogable de dos años que dispuso el Art. 5 de esta Ley para calificar, el documento quedó inscrito automáticamente. En la alternativa,

_____

[1] 30 LPRA sec. 1821, *et seq*.

plantea que conforme a la normativa de <u>Plaza del Rey, Inc. v. Registrador</u>, 133 D.P.R. 188 (1993), el Registrador erró al solicitar la cancelación de cierta hipoteca como requisito para proceder con la inscripción, independientemente de que el solar segregado fuera el último del proyecto residencial. Adelantamos que confirmamos la calificación del Registrador.

Pasamos a exponer un resumen de los hechos que son pertinentes para la resolución de la controversia y los fundamentos que sostienen nuestra decisión.

I

La peticionaria fue parte de las notarias y notarios encargados de redactar y otorgar las escrituras de Segregación, Liberación, Compraventa e Hipoteca de los solares de la Urbanización Parques de Guásimas, que ubica en el Municipio de Arroyo.[2] Para el 8 de mayo de 2003 la peticionaria otorgó la Escritura Núm. 36 titulada "Segregación, Liberación y Compraventa" mediante la cual se segregó y vendió el solar Núm. 13 del Bloque "F" de la urbanización. Es pertinente señalar que la finca en la cual radica dicho proyecto residencial quedó gravada por una hipoteca que se constituyó en garantía de un pagaré a favor del Banco Santander, o a su orden, por la suma principal de cuatro millones de dólares. En este instrumento público, Monte Real Development Corp., tenedor del pagaré, liberó gratuitamente el solar de esa hipoteca.

---

[2] Véase <u>Recurso Gubernativo</u>, pág. 2.

A esos efectos, hizo constar en la escritura que la liberación no afectaba el importe del principal del pagaré ni el de la hipoteca que lo garantizaba.[3]

El 20 de junio de 2003 la peticionaria presentó la Escritura Núm. 36 ante la Sección de Guayama del Registro de la Propiedad.[4] Transcurridos doce años, el 8 de mayo de 2015, el Registrador notificó que el documento adolecía de las siguientes faltas que impedían su inscripción:

1. El solar F-13 que se segrega por el documento presentado **es el último que queda por segregar** de la finca 6502 de Arroyo y que forma parte de la Urbanización Parques de Guásimas. Para proceder con la inscripción del mismo, falta la cancelación de la hipoteca que grava la finca matriz por la cantidad de $4,000,000.00 que responde esta finca a favor del Banco Santander de Puerto Rico. De haberla presentado, favor de comunicar el asiento y diario. Casablanca v. Registrador 130 D.P.R. 609.

2. Según las siguientes Resoluciones aprobadas por ARPE se requiere la segregación de las calles.
      Caso 01IU2-00007-02845 de fecha 03-06-2002, aprueba calle 11 plano 2176-G.
      Caso 01IU2-00008-02845 de la fecha 14-06-2002, aprueba calles 11 y 12 plano 2176-H.
      Caso 01U2-00006-02845 de fecha 25-02-2002, aprueba calles 10 plano 2176-F.
      Caso 01U2-00004-02845 de fecha 13-12-2001, aprueba calles 6 y 9 plano 2176-D.
      Caso 01U2-00003-02845 de fecha 28-11-2001, aprueba calles 7 y 8 plano 2176-C.
      Caso 01U2-00002-02845 de fecha 13-09-2001, aprueba calles 2 y 3 plano 2176-B.
      Caso 01U2-00000-02845 de fecha 15-06-2001, aprueba calles 1; 4 y 5 plano 2176.

---

[3] Surge de la propia Escritura Núm. 36 que la hipoteca que grava el predio se había presentado al Asiento 34 del tomo 520 del Diario de Operaciones del Registro de la Propiedad, Sección de Guayama. No consta en el legajo del caso la fecha en que se inscribió la referida hipoteca pero según surge de la calificación del Registrador de la Propiedad, en efecto, dicho gravamen quedó constituido sobre el inmueble.

[4] Presentada al asiento Núm. 165 del libro 595 del Diario de Operaciones.

> Se debe presentar la segregación de las calles conforme a dichas resoluciones. Art. 68.4 LH y 93 LH. (Énfasis nuestro).[5]

Así las cosas, la peticionaria presentó ante el Registro un Escrito de Recalificación por estar en desacuerdo con las faltas señaladas. Sostuvo que el Registrador "esta[ba] impedido de notificar falta alguna sobre dicho documento".[6] Amparó su tesis en el Art. 5 de la Ley Núm. 216, _supra_, que estableció un término improrrogable de dos años a partir de la vigencia de la ley para que los Registradores de la Propiedad calificaran ciertos documentos que no quedaron inscritos automáticamente por virtud de esa legislación. En vista de ello, arguyó que el término con el que contaba el Registrador para calificar la Escritura Núm. 36 presentada el 20 de junio de 2003 había vencido el 10 de febrero de 2013, puesto que la ley entró en vigor para el 10 de febrero de 2011.[7] Su postura fue que como el Registrador incumplió con su obligación de calificar dentro de este término, la escritura quedó calificada e inscrita de manera automática desde esa fecha. En la alternativa, señaló que debido al tiempo transcurrido entre la

---

[5] Véase, _Escrito de Calificación_. Apéndice del recurso gubernativo, Exhibit 2. Cabe señalar que la Ley Núm. 198 de 8 de agosto de 1979, conocida como la Ley Hipotecaria y del Registro de la Propiedad de 1979, según enmendada, ha sido derogada y sustituida por la Ley 210-2015 aprobada el 8 de Diciembre de 2015, la cual entrará en vigor a los 90 días después de su aprobación. Así también, la Ley Núm. 161-2009 derogó la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975 (23 LPRA sec. 71 et seq.).

[6] _Escrito de Recalificación_, Apéndice del Recurso Gubernativo, Exhibit 3, pág. 3.

[7] La Ley Núm. 216-2010 entró en vigor 45 días después de su aprobación.

presentación de la escritura y su calificación, sumado esto a otras circunstancias personales, le era imposible obtener copias e información sobre las escrituras de cancelación de hipoteca y de segregación de las calles.

El 1 de junio de 2015 el Registrador notificó a la peticionaria su determinación de sostener la calificación original.[8] Explicó que el Art. 5 de la Ley 216, supra, no conllevaba que los documentos que no fueran calificados dentro del término dispuesto en la ley quedaran inscritos automáticamente luego de transcurrir dicho periodo.

Aun inconforme, el 19 de junio de 2015 la peticionaria acudió ante esta Curia mediante el recurso gubernativo de epígrafe para solicitar la revocación de la denegatoria de inscripción. Para fundamentar su petición expone las mismas razones que ya hemos reseñado. Sin embargo, en esta ocasión aduce argumentos adicionales dirigidos a objetar en los méritos la calificación del Registrador. A su juicio, no era necesario cancelar la hipoteca que grava la finca matriz. En cuanto esto, sostiene que el Registrador incidió al no tomar en consideración lo que pautamos en Plaza del Rey, Inc. v. Registrador, supra, referente a la validez de las liberaciones de hipoteca a título gratuito. En lo que respecta a la solicitud de las escrituras de segregación de las calles, se limitó a argüir que previo a la calificación en controversia se habían inscrito en el

_____

[8] Véase, Denegatoria de Inscripción. Apéndice del recurso gubernativo, Exhibit 1.

Registro sendas escrituras similares a la Escritura Núm. 36 relacionadas a otros solares de la misma Urbanización Parques de Guásimas, esto, sin que el Registrador hubiese tenido ante sí las escrituras de segregación que ahora solicitaba. Adujo que esa situación "creó un estado de derecho de acorde con las inscripciones anteriores" y que por ello el Registrador "no podía exigir luego de doce años lo que antes obvió".[9]

El 10 de julio de 2015 el Registrador compareció y presentó su alegato en oposición al recurso gubernativo. Contando con el beneficio de la comparecencia de las partes, pasamos a resolver.

II

## A. La calificación registral y La Ley Núm. 216

El principio de legalidad exige que se examinen o califiquen los títulos que pretenden ingresar en el Registro, es decir, que se sometan a un examen minucioso acerca de su legalidad.[10] Nos indica Rivera Rivera que ello es comprensible cuando se trata de un sistema Registral en el cual se reputan sus asientos como exactos y concordantes con la realidad jurídica civil.[11] Por ello, hemos enunciado que la calificación constituye "piedra angular" del principio de legalidad puesto que le impone a los Registradores de la Propiedad la obligación de

---

[9] Véase, Recurso Gubernativo, pág. 9.
[10] L. Rivera Rivera, Derecho Registral, San Juan, Jurídica Editores, 3ra Ed., 2012, pág. 271.
[11] Id. Véase también, San Gerónimo Caribe Project v. Registradora, 189 D.P.R. 849, 860 (2013) (citando a R. Roca Sastre y otros, Derecho hipotecario, 9na ed., Barcelona, Ed. Bosch, 2008, T. I, pág. 614).

verificar que al Registro accedan únicamente títulos válidos y perfectos, de manera que gocen de la fe pública registral.[12] Así, los títulos defectuosos quedan rechazados del Registro, ya sea de forma definitiva o provisional. Esto se evalúa a la luz de las leyes vigentes a la fecha de su otorgamiento y las constancias del propio Registro.[13]

De acuerdo al Art. 52 de la Ley Hipotecaria y del Registro de la Propiedad de 1979,[14] vigente para la fecha en que se presentó la escritura de este caso, el Registrador debía registrar los documentos dentro de los 60 días siguientes a su presentación. Empero, este término podía extenderse cuando existiera justa causa, considerándose como tales, entre otras, la escasez de personal y materiales, la ausencia autorizada y prolongada del Registrador, el aumento inusitado de la presentación de documentos y la complejidad de los documentos presentados.[15] A causa del atraso que estas situaciones generaron en el Registro, la Asamblea Legislativa aprobó la Ley Núm. 216, supra.

---

[12] R&G Premier Bank P.R. v. Registradora, 158 D.P.R. 241, 246 (2002); Narváez v. Registrador, 156 D.P.R. 1, 14 (2002).

[13] El Art. 64 de la Ley Hipotecaria de 1970 dispone que "los registradores calificarán, bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes". 30 LPRA sec. 2267.

[14] 30 LPRA 2055 (Sup. 2014)

[15] Art. 66.2 del Reglamento para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad de 9 de julio de 1980, según enmendado, Reglamento Núm. 2674 del Departamento de Justicia.

En la Exposición de Motivos de la Ley Núm. 216, supra, se expresó que existía para la fecha de su aprobación una dilación de alrededor de 600,000 documentos sin calificar, los cuales se habían estado acumulando a través de los años.[16] Se enfatizó además que ese atraso no solo atentaba contra el tráfico jurídico de bienes inmuebles sino que, en efecto, lesionaba los derechos de los ciudadanos:

> El atraso en la inscripción de documentos, no solamente atenta contra el tráfico jurídico de bienes inmuebles, sino que lesiona derechos de ciudadanos que esperan 10 ó 15 años para que sus títulos queden inscritos. En ocasiones, se notifican faltas que impiden la inscripción y que por haber transcurrido tanto tiempo desde que se presentó el documento, es imposible resolverlas sin incurrir en gastos adicionales para el notario o la parte interesada.[17]

Mediante la Ley Núm. 216, supra, se implantaron varias estrategias que intentarían alivianar ese problema. Como parte de estas medidas, el Art. 2 estableció que quedarían inscritos a partir de la vigencia de la ley los documentos que se hubiesen presentado ante el Registro de la Propiedad al 30 de abril de 2010. Sin embargo, no gozarían de dicho beneficio los siguientes:

(a) **Documentos que comprendan segregaciones de fincas.**

(b) Documentos que comprendan agrupaciones de fincas.

(c) Documentos que comprendan agregaciones de fincas.

---

[16] 2010 (Parte 2) Leyes de Puerto Rico 1320.
[17] Id.

(d) Documentos que comprendan expropiaciones.

(e) Documentos que comprendan expedientes de dominio.

(f) Documentos en los cuales se rectifica la cabida o se describe un remanente.

(g) Documentos constitutivos de Régimen de Propiedad Horizontal.

(h) **Documentos posteriores que surjan de los negocios jurídicos mencionados en los incisos (a) al (g) de este Artículo,** así como los documentos presentados con posterioridad a la vigencia de esta Ley.

(i) Documentos notificados, caducados o en proceso de recalificación. (Énfasis nuestro).[18]

También se reseñó que era necesario adoptar una medida transitoria que ayudara a acelerar los trámites de inscripción pero "sin menoscabar los principios básicos del derecho hipotecario y conservando la fe pública registral" y "sin que se afect[ara] la fe pública ni la presunción de corrección de los títulos inscritos".[19] Al ser así, el Art. 5 le concedió a los Registradores un plazo improrrogable de dos (2) años, desde que entrara en vigor la Ley, para calificar todos aquellos documentos que no quedaron inscritos *ipso jure*. Este precepto reza de la siguiente manera:

Los Registradores tendrán un plazo improrrogable no mayor de dos (2) años, a

---

[18] 30 LPRA sec. 1821.
[19] Exposición de Motivos de la Ley Núm. 216-2010, supra.

partir de la vigencia de esta ley, para calificar todos los documentos que no quedan inscritos en virtud de este capítulo. Documentos presentados a partir del 1ro de mayo de 2010, tienen que ser calificados, dentro de un término improrrogable de 90 días laborables, contados a partir de la vigencia de esta ley. El incumplimiento con los términos aquí dispuestos por razones atribuibles únicamente a la conducta del Registrador, conllevará la imposición de sanciones disciplinarias que se dispondrán en el reglamento.[20]

Recientemente, en CRIM v. Registradora[21], interpretamos el alcance de esta disposición en el contexto de un recurso gubernativo que se presentó antes de que el Registrador calificara la escritura que se interesaba inscribir. Dentro de ese marco, manifestamos que el legislador solo vislumbró un remedio reglamentario ante el incumplimiento del término de dos años para calificar. Concluimos que el incumplimiento de ese plazo no implicaba que el Registrador se hubiese negado a calificar y precisamos que **"no pod[íamos], por fiat judicial, decretar que el documento quedó inscrito automáticamente por el mero transcurso del término improrrogable que estableció el legislador"**. (Énfasis nuestro).[22]

Luego de exponer la normativa de Derecho, procedemos a discutir los planteamientos de la peticionaria referentes a la autoridad que tenía el Registrador para calificar la Escritura Núm. 36.

III

---

[20] 30 LPRA sec. 1824.
[21] 2015 TSPR 137, 193 DPR ___ (2015).
[22] Id., pág. 8.

A

La Escritura Núm. 36 se presentó en el Registro para el año 2003. Como comprendía una segregación y otros negocios relacionados, no quedó inscrita automáticamente por virtud de la Ley Núm. 216, supra. En ese caso, el Legislador confirió un término de dos años a partir de la vigencia de la ley para que se calificara. Empero, la calificación tampoco se realizó dentro de ese término. Ante estos hechos, la peticionaria sostiene que la Escritura Núm. 36 quedó calificada e inscrita automáticamente, desde que transcurrió el plazo dispuesto para calificar. No le asiste la razón, pues esto no se contempla en ninguno de los catorce artículos que contiene la Ley Núm. 216, supra.

Sabemos que "cuando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".[23] Ya hemos señalado que en materia de hermenéutica debemos evaluar inicialmente el texto de la ley para determinar si su lenguaje es simple y preciso con relación a la controversia.[24] Ciertamente, "no hay necesidad de recurrir al subterfugio de indagar más allá de la ley para cumplir con su propósito legislativo cuando su texto es claro".[25] Lo anterior responde a que cuando el legislador se ha

---

[23] Art. 14 del Código Civil, 31 LPRA sec. 14.
[24] Spyder Media, Inc. v. Mun. San Juan, 2016 TSPR 10, 194 DPR ___ (2016); Doble Seis Sport v. Depto. Hacienda, 190 D.P.R. 763, 787 (2014); S.L.G. Solá-Moreno v. Bengoa Becerra, 182 DPR 675, 691 (2011).
[25] Doble Seis Sport v. Depto. Hacienda, supra, pág. 787.

manifestado con un lenguaje inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa.[26]

En este caso no es necesario auscultar el espíritu de la Ley Núm. 216, _supra_, para concluir que no le asiste la razón a la peticionaria. El Art. 5, _supra_, es claro al determinar que el incumplimiento del término improrrogable solo conlleva una consecuencia disciplinaria. Tan reciente como el año pasado emitimos una opinión en la que, aunque en otro contexto fáctico, fuimos enfáticos al dictaminar que esta ley no disponía que un documento quedara inscrito automáticamente por el mero transcurso del término improrrogable que estableció el legislador.[27] En otras palabras, esta ley no suprimió al Registrador de la Propiedad del deber de calificar las escrituras que quedaron exceptuadas de inscripción automática. Estas fueron las medidas que la Asamblea Legislativa entendió que eran necesarias a fin de atender la situación del atraso que experimentaba el Registro de la Propiedad. Consiguientemente, el Registrador actuó dentro de sus deberes y facultades al calificar la Escritura Núm. 36 objeto de este recurso.

Establecido esto, nos resta dilucidar si dicha calificación fue conforme a derecho.

---

[26] _Spyder Media, Inc. v. Mun. San Juan_, supra.
[27] _CRIM v. Registradora_, supra.

B

La primera falta que señaló el Registrador alude a que la Escritura Núm. 36 no podía inscribirse porque se debía cancelar la hipoteca que grava la finca matriz. Según describimos, el solar F-13 es el último solar que se segregó de la Urbanización Parques de Guásimas, mientras, el predio en el que radica dicho proyecto consta gravado por una hipoteca constituida en garantía de un pagaré por la suma de cuatro millones de dólares.

La finalidad de la hipoteca es garantizar o asegurar la satisfacción de un crédito dinerario.[28] Como sabemos, en nuestro sistema registral inmobiliario permea el principio de indivisibilidad de la hipoteca que postula que la garantía hipotecaria "subsiste íntegra sobre todas y cada una de las partes del crédito mientras este no se cancele".[29] A ese tenor, el Art. 173 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, establecía que:

> [l]a hipoteca subsistirá íntegra sobre la totalidad de los bienes hipotecarios mientras no se cancele, aunque se reduzca la obligación garantizada, y sobre cualquier parte de los mismos bienes que se conserven, aunque la restante haya desaparecido; pero sin perjuicio de lo que se dispone en las dos siguientes secciones.[30]

Por su parte, el Art. 174 de esa misma legislación consignaba que:

> [s]i una finca hipotecada se dividiere en dos (2) o más, no se distribuirá entre ellas el crédito hipotecario sino cuando voluntariamente lo

---

[28] A.C.T. v. 780.6141M2, 165 DPR 121 (2005).
[29] Rivera Rivera, op cit., pág. 493.
[30] 30 LPRA sec. 2569.

acordaren el deudor y acreedor. No verificándose esta distribución, podrá repetir el acreedor por la totalidad de la suma garantizada contra cualquiera de las nuevas fincas en que se haya dividido la primera o contra todas a la vez.[31]

Este principio de indivisibilidad se manifiesta en dos órdenes: en el jurídico y en el físico.[32] En cuanto al aspecto jurídico, aun cuando la obligación se disminuya, el derecho real de hipoteca continuará gravando la totalidad del inmueble o derecho.[33] Respecto al aspecto físico, la hipoteca se mantendrá intacta "aunque la finca hipotecada se divida o sufra cambios físicos."[34] De manera que, si se hipoteca un terreno y una parte de este desaparece, la hipoteca subsistirá en la parte restante; y si una finca única se divide en tres pedazos, cada uno de estos responderá por la totalidad del gravamen, salvo que a pacto en contrario se libere.[35] En Banco de San Juan v. Registrador[36], ya habíamos manifestado que la característica de indivisibilidad permitía pacto en contrario.

La peticionaria sostiene que el Registrador erró en su calificación al no tomar en consideración que en Plaza del Rey v. Registrador, supra, modificamos nuestros pronunciamientos de Casablanca Properties, Inc., v. Registrador de la Propiedad, supra, para admitir, a su juicio, el tipo de liberación que se realizó en este caso

---

[31] 30 LPRA sec. 2570.
[32] Casa Blanca Properties v. Registrador, 130 D.P.R. 609, 614 (1992), citando a Morell.
[33] Id.
[34] Rivera Rivera, op. cit., pág. 494.
[35] Casa Blanca Properties v. Registrador, supra, pág. 615.
[36] 103 D.P.R. 417, 419-420 (1975).

mediante la Escritura Núm. 36. No le asiste la razón. Nos explicamos.

En Casablanca Properties, Inc., v. Registrador de la Propiedad, supra, atendimos una controversia hipotecaria de carácter novel en nuestro ordenamiento jurídico para aquel entonces. En ese caso se constituyó una hipoteca sobre el terreno en el cual se iba a edificar un condominio y se otorgó un pagaré hipotecario por la suma de $1,425,000 para el financiamiento interino de la obra.[37] Tras concluirse la construcción y someterse el condominio al régimen de propiedad horizontal, la hipoteca quedó gravando cada uno de los apartamentos de dicho condominio.[38] Estos apartamentos eran liberados según se vendían a fin de que la suplidora del financiamiento permanente pudiera proveer un financiamiento que estuviera garantizado mediante una hipoteca con rango de primera.[39] Trascendió que cuando se vendió **el último apartamento**, el Registrador denegó la inscripción por entender que no podía liberarse sin cancelar la hipoteca que gravaba el terreno, es decir, la hipoteca del financiamiento interino.[40] Al justipreciar si la calificación fue correcta señalamos lo siguiente:

> …la pretendida liberación del apartamento Núm. 9 de la Hipoteca del *financiamiento interino* atenta contra el principio de legalidad registral. Generaría una

---

[37] Casablanca Properties, Inc., v. Registrador de la Propiedad, supra, pág. 612.
[38] Id.
[39] Id., pág. 613.
[40] Id.

discrepancia impermisible entre los asientos del Registro y la realidad jurídica.

[…]

No es posible liberar un apartamento de un crédito hipotecario afirmando que '[n]o se reduce en forma alguna ni el principal del pagaré ni la hipoteca'. **Si el crédito hipotecado y el pagaré no disminuyen, ¿en qué consiste la liberación? Nuestro ordenamiento registral no permite liberar en un asiento la hipoteca y dejar vigente el asiento del derecho real de hipoteca**…

[…]

En resumen, estamos ante un esquema anormal e impermisible. Si bien todos los apartamentos han sido "liberados" de la hipoteca de construcción, esta no ha sido cancelada ni parcial ni totalmente. **Como figura absurda permanente, subsiste en los libros del Registro de la Propiedad una hipoteca despojada por sucesivas liberaciones de toda garantía inmobiliaria y desvinculada por completo del inmueble sobre el cual fue constituida. Simultáneamente en el tráfico de valores subsiste un pagaré engañoso, cuyo importe dice estar asegurado con primera hipoteca sobre el Condominio** Casa Blanca. Tampoco se han satisfecho los derechos arancelarios. (Énfasis nuestro y citas omitidas).[41]

En ese caso también enunciamos que la estructura jurídica de las hipotecas representadas por títulos al portador o a la orden, imponía como único método de liberación la cancelación parcial o total, conforme al Art. 138 de la Ley Hipotecaria de 1979.[42]

---

[41] Casa Blanca Properties, Inc., v. Registrador, supra, págs. 615-617.

[42] Id., en la pág. 617. Este artículo lee de la siguiente manera:

Sin perjuicio de lo dispuesto en la sec. 2460 de este título sobre la cancelación de gravámenes posteriores, las inscripciones de hipoteca constituidas para garantizar obligaciones representadas por títulos transferibles por endoso o pagaderos al portador, cualquiera que sea la denominación que se les asigne, se cancelarán total o parcialmente mediante escritura otorgada por los tenedores legítimos de los títulos expresados. En todo caso deberá hacerse constar en la escritura la

Sin embargo, un año después, en <u>Plaza del Rey v.</u> <u>Registrador</u>, supra, se solicitó la reconsideración parcial de una sentencia que habíamos emitido conforme a *Casa Blanca.* Nótese que en *Plaza del Rey* no se cuestionó la corrección de la norma que exigió el pago total de los aranceles correspondientes al valor de la hipoteca cuando se liberaba de gravamen el último apartamento individualizado.[43] Más bien, se objetó lo referente a que la única forma de liberar una hipoteca en garantía de títulos al portador o por endoso fuera la cancelación total o parcial del gravamen. Al atender esos planteamientos reconsideramos los pronunciamientos de *Casa Blanca* **a los únicos efectos de reconocer las liberaciones gratuitas entre partes.**[44] Aclaramos que la vía del Art. 138 de la Ley Hipotecaria era necesaria exclusivamente cuando la finca hipotecada no se pudiera dividir, en otras palabras, **"cuando se trate del remanente sobre el cual se aplica el gravamen hipotecario".**(Énfasis nuestro).[45]

---

identificación de los títulos y su inutilización o reducción parcial en el acto del otorgamiento. Si todos o algunos de dichos títulos se hubiesen extraviado o hubieren sido destruidos sin los requisitos anteriores, únicamente podrán cancelarse dichas inscripciones mediante la presentación de la sentencia firme en que se declare haber quedado extinguidas las obligaciones representadas por los referidos títulos.

En las escrituras de cancelación de títulos transferibles por endoso será obligación del notario hacer constar que el compareciente es tenedor por endoso o que el último endoso se hizo en blanco. 30 LPRA sec. 2462.

[43] <u>Plaza del Rey v. Registrador</u>, supra, pág. 190 (nota 1).
[44] Id., pág. 195.
[45] Id., pág. 194.

En el caso que nos ocupa, mediante la Escritura Núm. 36 se pretendió liberar al **último solar** de la Urbanización Parques de Guásimas de la hipoteca que, en garantía de un pagaré a favor del Banco Santander o a su orden, grava la finca en la que ubica ese proyecto residencial. Sin embargo, en ese mismo documento se hizo constar que esa liberación "no afecta[ba] el importe del principal del pagaré ni el de la hipoteca que lo garantiza[ba]".[46] Evidentemente, y a la luz de la jurisprudencia discutida, permitir dicha segregación y la liberación gratuita sin la correspondiente cancelación de hipoteca atenta contra el principio de legalidad ya que propiciaría una disyuntiva entre la realidad registral y extra registral; la existencia de una hipoteca desvinculada del inmueble sobre el que recae. Es evidente que ese negocio jurídico no se realizó conforme a la jurisprudencia que hace poco más de dos décadas establecimos en este Tribunal. Por consiguiente, colegimos que no erró el Registrador en cuanto a la primera falta señalada. En efecto, para poder proceder a la inscripción de los negocios jurídicos contenidos en la Escritura Núm. 36, era necesario que se cancelara la hipoteca que de acuerdo a los asientos del Registro, se encuentra constituida sobre la totalidad del inmueble en el que radica el solar "F-13" que sería segregado. Procedemos ahora a analizar los planteamientos

---

[46] Véase, Cláusula Octava de la Escritura Núm. 36, Exhibit 4 del Recurso Gubernativo, pág. 5.

relacionados a la segunda falta notificada por el Registrador.

En su segunda falta, el Registrador especificó que conforme al Art. 93 de la Ley Hipotecaria de 1979, faltaba por presentar las escrituras de las segregaciones de ciertas calles según las Resoluciones que había emitido la extinta ARPe. Este Artículo establece que:

> En el caso de cualquier desarrollo urbano de una finca, no podrá registrarse segregación alguna, sin que antes se presenten los documentos en que se segreguen las parcelas dedicadas al uso común o público, y en que se consigne la cabida del resto del área destinada a estos propósitos con arreglo al plano e informes aprobados e inscritos en el Registro de Planos.[47]

Cónsono con lo anterior, el Art. 101.1 del Reglamento Hipotecario, _supra_, dispone que "[s]erán segregados previamente a cualesquiera otras parcelas, aquéllas que de acuerdo con el plano aprobado por las agencias gubernamentales concernidas deban segregarse para ser destinadas al uso común o público".[48] En vista de ello, "el registrador está impedido de extender cualquier asiento relativo a un negocio jurídico si no se satisface la exigencia administrativa".[49]

En cuanto a esta segunda falta la peticionaria se limita a argumentar que, debido a que ciertas escrituras sobre segregaciones y compraventa de otros solares de la misma urbanización se inscribieron con ese defecto, no

---

[47] 30 LPRA sec. 2316.
[48] Reglamento para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad Núm. 2674, Art. 101.1.
[49] Rivera Rivera, _op. cit._, pág. 383.

procedía que el Registrador requiriera esos documentos. La

peticionaria se circunscribe a exponer lo siguiente:

> al calificar e inscribir todas las escrituras
> sobre Segregación, Liberación y Compraventa
> otorgadas por la suscribiente entre el 2000 y
> 2003, entiéndase escrituras otorgadas antes del 8
> de mayo de 2003, sin tener ante si las
> segregaciones de las calles de la Urbanización
> Parques de Guásimas, según Resoluciones aprobadas
> por ARPE de fechas 2001 y 2002, el Registro de la
> Propiedad, sección de Guayama, creó un estado de
> derecho acorde con las inscripciones anteriores
> que incluye la escritura de Segregación.
> Entendemos que después de 12 años no puede exigir
> lo que antes obvió.[50]

Es oportuno reiterar que al momento de ejercer su

deber de calificar un documento, el Registrador está

obligado a estudiar la legalidad del mismo, analizando

si estos son válidos y perfectos como para poder

entrar al registro. De acuerdo al Art. 68 de la Ley

Hipotecaria de 1979, una de las faltas que impiden la

inscripción es cuando no se acredita el cumplimiento

con las formalidades exigidas por las leyes.[51] A tenor

con el Art. 93 de la Ley Hipotecaria de 1979, <u>supra</u>,

en los proyectos de desarrollo urbano el Registrador

está impedido de inscribir segregación alguna si no se

han presentado antes los documentos en que se

---

[50] Recurso Gubernativo, pág. 9.
[51] Este Artículo reza:
> Serán faltas que impidan la registración del título
> presentado:
> (1) Las que causen la inexistencia del acto o contrato a
> registrarse o la nulidad o anulabilidad de éste o del
> documento presentado.
> (2) Las que se originen de obstáculos del Registro.
> (3) Las que se funden en disposiciones de este subtítulo.
> (4)El no presentar los documentos complementarios
> necesarios o **no acreditarse el cumplimiento de las
> formalidades exigidas por las leyes.** (Énfasis nuestro). 30
> LPRA sec. 2271.

segreguen las parcelas dedicadas al uso común o público según sea solicitado por las agencias administrativas pertinentes. Por ello, al no constar en el Registro las segregaciones de las calles, requeridas por ARPe, el Registrador estaba impedido de practicar la segregación solicitada. Ello es así, independientemente de los errores que se aducen que fueron cometidos en calificaciones previas relacionadas a otras escrituras. Cónsono con lo anterior, resolvemos que no erró el Registrador al requerir que se presentaran las escrituras de segregaciones correspondientes como condición para proceder con la inscripción.

IV

Por los fundamentos que preceden, se confirma la calificación impugnada.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta señora Oronoz Rodríguez concurre sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Concurrente.

Juan Ernesto Dávila Rivera<br>Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Fabiola Fernández Chavez<br><br>    Peticionaria<br><br>         v.<br><br>Ismael L. Purcell Soler<br>Registrador de la Propiedad<br><br>    Recurrido | **Núm.** <u>RG-2015-0004</u> | |

Voto Particular Concurrente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de abril de 2016.

Estoy conteste con confirmar la calificación del Registrador en el presente caso, puesto que estimo que éste no erró al requerir, en el ejercicio de su función calificadora, la cancelación de la hipoteca que gravaba la totalidad del inmueble y las escrituras de las segregaciones de ciertas calles dentro de la urbanización. No obstante, preciso abundar en el argumento de la peticionaria relacionado con la facultad calificadora del Registrador y los términos que la rigen.

Ciertamente, las disposiciones de la polémica Ley Núm. 216 de 2010, 30 L.P.R.A. sec. 1821 *et seq.*, no contemplan la inscripción automática de un documento en el Registro ante el incumplimiento del Registrador con el término improrrogable de noventa (90) días para calificar. Como se indica en la sentencia que antecede,

la escritura de segregación, liberación y compraventa presentada ante el Registro de la Propiedad, Sección de Guayama, fue calificada transcurridos casi doce (12) años desde su presentación. A todas luces, el transcurso de tantos años para calificar el documento presentado es injustificable.

Si bien es cierto que la *Ley hipotecaria* de 1979 contemplaba la existencia de justa causa para incumplir con el término de sesenta (60) días dispuesto en su Artículo 52, 30 L.P.R.A. sec. 2255, término que fue extendido a noventa (90) días por la Ley Núm. 216, *supra*, la existencia de tal justa causa, **no puede justificar una dilación de más de una década**. Resulta oportuno subrayar que la nueva *Ley hipotecaria* prescinde de tal excepción. Así, el Artículo 234 de la *Ley del Registro de la propiedad inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210 del 8 de diciembre de 2015, impone a los Registradores de la Propiedad el deber de calificar los documentos dentro del término de noventa (90) días laborables desde su presentación sin contemplar la existencia de justa causa para su incumplimiento.

El Artículo 234 de la nueva *Ley hipotecaria* expresamente dispone que "[e]l incumplimiento con el término dispuesto en este Artículo dará lugar a sanciones disciplinarias según se disponga por reglamento". Art. 234, Ley Núm. 210 del 8 de diciembre de 2015, *supra*. Este precepto responde a la necesidad de que los Registradores

realicen sus deberes eficientemente y sin incurrir en demoras que obstaculicen la inscripción de documentos en el Registro y redunden en la notificación tardía de faltas cuya rectificación podría resultar excesivamente onerosa para las partes interesadas. En lo sucesivo, una dilación en calificar como la que observamos en este caso sería base suficiente para la imposición de sanciones disciplinarias.

El Registro de la Propiedad es una institución que tiene como finalidad la publicidad de la situación jurídica de los bienes inmuebles mediante la inscripción de los actos y contratos relacionados a éstos, a fin de proteger el tráfico jurídico. Considerando que la actividad registral está dirigida principalmente a darle publicidad a ciertos actos jurídicos relacionados con los bienes inmuebles, se hace necesario que el Registro pueda ser "un medio técnico y adecuado, a través del cual se pueda dotar a tales actos de la forma precisa para conseguir dicha publicidad." Sanz Fernández, A., *Instituciones de Derecho Hipotecario*, Reus, Madrid, 1947, t. 1, pág. 31 (énfasis nuestro).

Un sistema registral donde, presentada una escritura de segregación, liberación y compraventa, transcurre más de una década y ese documento no ha sido calificado, no es un sistema que facilite y propicie el tráfico eficaz de los inmuebles. Por el contrario, ese Registro no constituye el "medio técnico y adecuado" de que nos habla

la doctrina. En estas circunstancias, verdaderamente, no se puede hablar de que sea un valor registral en nuestro entorno el principio de la seguridad jurídica. "[S]i el Derecho es el arte de lo justo y la Justicia es un valor superior que debe ser logrado por todo el Estado de Derecho, la seguridad supone la cristalización del principio, haciendo justo todo lo que tienda a ser seguro, a ofrecer seguridad." Chico y Ortiz, J.M., *Seguridad jurídica y revisión crítica de los principios hipotecarios*, Marcial Pons, Madrid, 1994, pág. 30.

La incertidumbre e inseguridad en el tráfico jurídico que genera la inacción de un Registrador al momento de cumplir con su deber ministerial de calificar documentos dentro del término prescrito por ley no pueden ser condonadas por este Tribunal. Los esfuerzos concertados de la Rama Legislativa de agilizar los trámites ante el Registro de la Propiedad serían fútiles si no se le exige a los Registradores calificar con celeridad los documentos presentados y se imponen las sanciones disciplinarias que conlleva su incumplimiento.

Anabelle Rodríguez Rodríguez
Juez Asociada